ACCEPTED
03-15-00416-CV
7644704
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/2/2015 3:35:32 PM
JEFFREY D. KYLE
CLERK

CASE NO. 03-15-00416-CV

_____

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS AT AUSTIN TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/2/2015 3:35:32 PM
JEFFREY D. KYLE
Clerk

_____

OAK MORTGAGE GROUP, INC., MICHAEL H. NASSERFAR,
MICHAEL E. TASK, AND TYCORD R. GOSNAY

Appellants

V.

AMERIPRO FUNDING, INC.

Appellee

Appeal from the 345th Judicial District Court
of Travis County Texas

_____

## APPELLANTS' REPLY BRIEF

_____

Wm.  Charles Bundren, Esq.
Attorney-in-Charge
State Bar No.  03343200
2591 Dallas Parkway
Suite 300
Frisco, Texas 75034
Telephone:214.808.3555

NOVEMBER 2, 2015                     **ORAL ARGUMENT REQUETSED**

**TABLE OF CONTENTS**

PAGE

TABLE OF CONTENTS                                                    1

INDEX OF AUTHORITIES                                                 3

REPLY STATEMENT OF FACTS                                            6

SUMMARY OF THE REPLY ARGUMENT                                       6

NO DISAGREEMENT REGARDING STANDARD OF REVIEW          12

ARGUMENT AND AUTHORITIES                                           12

I.      AMERIPRO FAILS TO OFFER JUSTIFICATION FOR
        THE TEMPORARY INJUNCTION ORDER WHICH IS VOID
        BECAUSE IT DOES NOT COMPLY WITH THE REQUIREMENTS
        OF RULE 683 AND THERE IS NO EVIDENCE IN THE RECORD
        TO SUPPORT THE ELEMENTS NECESSARY TO OBTAIN A
        TEMPORARY INJUNCTION.                                      12

II.     REPLY TO AMERIPRO ARGUMENT APPLYING
        THE NON-SOLICITATION PROVISIONS OF THE
        CONTRACTS TO REAL ESTATE HOMEBUILDERS
        AND CONDOMINIUM DEVELOPERS, REAL ESTATE
        SALES AGENTS, AND OTHER REAL ESTATE
        PROFESSIONALS INVOLVED IN THE REAL ESTATE
        INDUSTRY BECAUSE THEY ARE NOT "CUSTOMERS"
        OF AMERIPRO                                                20

III.    REPLY TO AMERIPRO ARGUMENT THAT APPELLANTS
        CAN BE BARRED FROM SOLICITING AMEREIPRO
        CUSTOMERS FOR A COMPETITOR IN BREACH OF
        FIDUCIARY DUTIE                                            24

IV.     REPLY TO AMERIPRO BRIEF PART IV.                           27

V.      REPLY TO AMERIPRO BRIEF PART V.                           30

1

VI. REPLY TO AMERIPRO ARGUMENT THAT THE TEMPORARY INJUNCTION IS NOT OVERBROAD AND THAT THERE IS A DIRECT NEXUS BETWEEN THE ENJOINED CONDUCT AND IMMINENT AND IRREPARABLE INJURY TO AMERIPRO.                    34

PRAYER                    37

CERTIFICATE OF SERVICE                    37

CERTIFICATE OF WORD COMPLIANCE                    38

# INDEX OF AUTHORITIES

PAGE

**CASES**

*Adust Video v. Nueces County*,
996 S.W.2d 245(Tex. App.--Corpus Christi 1999, no pet.)      13

*Amalgamated Acme Affiliates, Inc. v Minton,*
33 S.W.3d 387 (Tex. App. -- Austin 2000, no pet)      19

*Conley v DSC Commun. Corp*., 199 WL 89955 *5
(Tex. App. -- Dallas February 24, 1999, no pet.)      18

*Correa v. Houston Surg. Asst. Serv., Inc*. , 2013 WL 3958499
(Tex App. -- Houston [14th Dist.] July 30, 2013, no pet.)      35

*ERI Consult. Engrs., Inc. v. Swinnea*, 318 S.W.3d 867
(Tex. 2010)      24

*Flake v. EGl Eagle Global Logistics, L.P*., 2002 WL 31008136 *4
(Tex. App. -- Houston [14th Dist. ] September 2, 2002, no pet.)      32

*Frequent Flyer Depot, Inc. v American Airlines, Inc.* 281 S.W.3d 215
(Tex. App. -- Fort Worth 2009, pet. denied)      32

*Garth v Staktek Corp*., 876 S.W.2d 545
(Tex. App. -- Austin 1994, writ dism'd w.o.j.)      31

*Hill v. McLane Co., Inc*. 2011 WL 56061 *5
(Tex. App. -- Austin January 5, 2011, no pet)      18

*Hunter v. Bldgs. & Mfg. LP v. MBI Global, LLC,* 436 S.W.3d 9
(Tex. App. -- Houston [14th Dist] 2014, pet. denied)      25

*Inex Indus., Inc. v. Alpar resources, Inc.,* 717 S.W.2d 685
(Tex. App. -- Amarillo 1986, no writ)      19

*IAC, Ltd. v. Bell Helicoptor Textron, Inc*. 160 S.W.3d 191
    (Tex. App.-- Fort Worth 2005, no pet.)          17

*Miller Paper Co. v. Roberts Paper Co*., 901 S.W.2d 593
    (Tex. App. -- Amarillo 1995, no pet.)          30

*Rugen v Interactive Business Systems, Inc.,* 854 S.W.2d 548
    (Tex. App. -- Dallas 1993, no pet.)          18

*Texas Tech University Health Sciences Center v. Rao,*
    105 S.W.3d 763 (Tex. App. -- Amarillo 2003, pet. dismissed)          19

*Tranter, Inc. v. Liss*,
    2014 Tex. App. LEXIS 3398, 2014 WL 1257278 at *7
    (Tex. App. -- Fort Worth, March 27, 2014 no pet.)          18

*Walling v. Metcalfe*,
    863 S.W.2d 56 (Tex. 1993)          32

## **STATUTES**

TEXAS FINANCE CODE, Title 3, Chapter 180 (2015)
(Residential Mortgage Loan Originators)          32

TRUTH IN LENDING ACT, 15 U.S.C. §1601, *et seq.*          32

THE DODD-FRANK WALL STREET REFORM
AND CONSUMER PROTECTION ACT 124 Stat. 1376 (2010)          32

THE EQUAL CREDIT OPPORTUNITY ACT, 15 U.S.C. 1691 *et. seq.*          32

THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. 1861, *et seq.*          32

THE S.A.F.E. MORTGAGE LICENSING ACT, 12 U.S.C. § 5101, *et seq.*          32

THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA),
12 U.S.C. § 2601, *et. seq.*          32

## **Rules**

TEX. R. CIV. P. 683          Passim

## **OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY 348 (5th ed. 1979)        22

**REPLY STATEMENT OF FACTS**

There is no evidence in the record that Nasserfar, Task or Gosnay "secretly solicited customers on behalf of Oak Mortgage." (*See*, Ameripro Brief (hereinafter referred to as "A. Brief") at 3). There is no evidence that homebuilders, residential developers or residential real estate agents are "customers" as that term is defined in the employment agreements. There is no evidence that Brohn Home, Clark Wilson builders or Seaholm Residences were ever "customers" of Ameripro as explained in the employment agreements. There is also no evidence that Appellants possessed any information of Ameripro after May 15, 2015 and that by the time of the temporary injunction hearing on May 26, 2015 all information of Ameripro was returned.

## II.

## SUMMARY OF THE REPLY ARGUMENT

The cornerstone to Ameripro's application for temporary injunction, arguments in its brief, and the validity of the temporary injunction is Ameripro's erroneous factual argument that Appellants destroyed property of Ameripro and it was imminent that Appellants would continue to destroy additional property of Ameripro if the temporary injunction was not granted thus causing Ameripro irreparable injury because the property would be forever lost. This factual argument is without merit. There is no evidence from the temporary injunction

6

record that any property of Ameripro that was ever destroyed by Appellants or that any property of Ameripro was in danger of being destroyed by Appellants if the district court did not grant the temporary injunction. Although challenged to cite to such evidence, Ameripro's Brief fails to do so. Not one place in the record is there any evidence that Ameripro lost any property or electronic files except from Ameripro's own spoliation of the electronic files from the computer turned into Ameripro by Nasserfar. The complete absence of any evidence of destruction or imminent future destruction of Ameripro's property by Appellants speaks loudly of the complete absence of the clearly established legal requirement that the temporary injunction be entered because of imminent and irreparable injury to the applicant.

Ameripro fallaciously turns backed up *copies* of electronic files from computers (done so pursuant to the policies and procedures of Ameripro) to external backup files into a theory of destruction of property and imminent future destruction of property. Not so. At best, the evidence only supports the conclusion that Appellants, as they were required to do by Ameripro's policy, backed up and *copied* electronic files from their Ameripro computers onto external drives owned by Nasserfar and Task, and then failed to remove the backed up copies of the electronic files from their personal external drives after they ceased being employed by Ameripro. However, prior to the temporary injunction hearing which

7

began on May 26, 2015, Appellants returned all backed up *copies* of the electronic files from their personal external drives, and then, as required by the May 12, 2015 temporary restraining order, deleted the backed up *copies* of the electronic files from their personal electronic storage devices.  Nothing was destroyed. Ameripro's arguments have no merit.

Past conduct is irrelevant to *imminent* and *irreparable* future injury..  For purposes of the temporary injunction, the only relevance is the prevention of future *imminent* and *irreparable* injury. Consequently, Ameripro's Brief and its arguments miss the mark.  They do not address the evidence in the record necessary to establish *future imminent* and *irreparable* injury and the nexus between the specific actions that are enjoined in the order and the evidence of probable future imminent and irreparable injury.  Instead, as it did at the temporary injunction hearing, Ameripro focuses only on *past* conduct  -- not imminent future and irreparable actions. Ameripro does not address its failure to offer evidence at the temporary injunction hearing of any *imminent* injury that would cause Ameripro *irreparable* injury.

Ameripro fails to rebut the fact that Ameripro swore that it was entitled to recover nearly $2 million in damages for various claims against Appellants. And, does not dispute that Texas law does not permit a temporary injunction to enforce a contract where the applicant for the injunction has an adequate remedy at law to

8

recover damages.  Ameripro simply cannot identify evidence from the record that there is probable *imminent* and *irreparable* injury that will occur if the injunction is not granted, Ameripro mischaracterizes the past conduct and offers no argument, evidence or explanation of any imminent future conduct of Appellants that is likely to cause Ameripro irreparable injury.

Ameripro's Brief fails to sustain its burden of establishing imminent and irreparable injury which would probably occur and would necessitate the entry of a temporary injunction. And, Ameripro completely fails to respond to or rebut the failure of the temporary injunction order and the record to establish any nexus between any imminent or irreparable injury, and the specific acts of the order that are enjoined.  What imminent and irreparable injury would Ameripro suffer if the temporary injunction order was not entered? Where in the record is there any evidence establishing a nexus between imminent and irreparable injury and the specific actions enjoined by the district court?

Ameripro failed to rebut Texas law which requires that the temporary injunction order explain why the injunction is necessary in order to prohibit *imminent* and *irreparable* injury to Ameripro.  Ameripro merely restates the applicable legal standard from the Texas rules and statutes but fails to provide any reasoning or justification for the injunctive relief and why the injunctive relief is necessary to prevent *imminent* and *irreparable* injury.  Texas law clearly requires

that the temporary injunction order must state specifically why the specifically enjoined acts are necessary in order to prevent *imminent* and *irreparable* injury, and Ameripro's brief fails to address the connection between the evidence in the record and the need to prevent imminent or irreparable injury.

Neither the temporary injunction order, nor the evidence in the record, nor Ameripro's Brief identifies the elusive "trade secret" which forms the basis of Ameripro's trade secret misappropriation claim. What is the trade secret? Ameripro cannot articulate the secret and has never stated what the information is within the alleged trade secret that is the basis for the trade secret protection claim. Ameripro offers no argument or legal authorities to rebut the clear evidence that the identity and contact information of publicly known residential builders and developers, and residential real estate brokers can never be a trade secret and, therefore, as a matter of law, the district court erred in finding that public information is a trade secret and in enjoining the use of public information.. Since the trade secret is never identified by the district court or Ameripro, and Ameripro does not identify the trade secret in its brief, the district court erred in referencing any trade secrets in the injunction order and in finding a likelihood of recovery on a trade secret that does not exist.

Ameripro offers no rebuttal argument regarding the failure of the contract to define the term "customer", and agrees that Ameripro's President admitted that

Ameripro provides loans to residential borrowers and that the residential borrowers are the "customers" of the Ameripro. Ameripro offers no rebuttal to the testimony or argument disputing its President's testimony that Ameripro has no contracts, agreements or business relationships with residential homebuilders and developers. Ameripro's only rebuttal is that one of the loan officers might construe the contract to refer to "referral sources." That is insufficient. Although given the opportunity to do so in its response brief, Ameripro failed to offer valid arguments and law to support the district court's erroneous conclusion that public information regarding residential builders, developers, real estate agents and referral sources are the equivalent of "customers" of Ameripro. And, consequently, the district court abused its discretion in restraining Appellants from soliciting the homebuilders.

Ameripro offered no valid arguments why the temporary injunction order is not overbroad. Ameripro posits no arguments and no evidence establishing a nexus between the acts restricted in the temporary injunction order and the need to protect Ameripro from imminent and irreparable injury. There must be a nexus and Ameripro offers none.

Ameripro offers no valid argument or evidence why the temporary injunction order is not erroneous because it fails to limit the restrictions on solicitation to one (1) year after the termination of the employment contracts -- January 19, 2016. Ameripro offers no argument or response, and no evidence from

11

the record to establish a nexus between imminent and irreparable harm probable to occur and the injunction order compelling Appellants to turn over there forensic images of their electronic devices and to cease and desist from using their electronic devices including cell phones, hard drives and laptops which they had used in their ordinary and daily business practices.

## NO DISAGREEMENT REGARDING STANDARD OF REVIEW

Ameripro does not dispute that a trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or misapplies the law to the established facts of the case and that there is no particular deference to legal conclusions of the trial court and a de novo standard of review applies when the issue turns on a pure question of law. Ameripro does not dispute that a trial court abuses its discretion by entering an overly-broad' injunction which grants 'more relief' than a plaintiff is entitled to by enjoining a defendant from conducting lawful activities or from exercising legal rights. [1]

## REPLY ARGUMENT AND AUTHORITIES

## I.

**AMERIPRO FAILS TO OFFER JUSTIFICATION FOR THE TEMPORARY INJUNCTION ORDER WHICH IS VOID BECAUSE IT DOES NOT COMPLY WITH THE REQUIREMENTS OF RULE 683 AND THERE IS NO EVIDENCE IN THE RECORD TO SUPPORT THE ELEMENTS NECESSARY TO OBTAIN A TEMPORARY INJUNCTION.**

---

[1] *See* authorities cited in Appellants' Opening Brief at 20-21.

In response to Appellants' argument that the temporary injunction order is void because it does not comply with the strict requirements of Rule 683 of the Texas Rules of Civil Procedure which requires that every order granting an injunction must "set forth the reasons for its issuance" and "be specific in its terms" and must provide a "detailed explanation of the reason for the injunction's issuance", *see e.g., Adust Video v. Nueces County*, 996 S.W.2d 245, 249 (Tex. App.--Corpus Christi 1999, no pet.), Ameripro refers to mere conclusions in the temporary injunction order to claimed "destruction" of Ameripro's documents and past "taking" of information belonging to Ameripro from "Ameripro's computer network "(Ameripro Brief at 22-23); but, Ameripro fails to explain or establish from the language of the order why any of these references in the order provide any nexus to the specific *future* acts enjoined by the order, or why these conclusions satisfied the requirements of Texas law. Merely restating the legal standard for a temporary injunction does not provide the detailed explanation and reasons for the necessity of the extraordinary relief of an injunction. There is no evidence from the record that Appellants' "permanently destroy[ed]" any Ameripro "documents", and Ameripro cites no reference in the record to support that conclusion. There no evidence that at the time of the temporary injunction hearing on May 26, 2015 Appellants' had in their possession of any "documents" or "confidential and proprietary information belonging to" Ameripro. Ameripro cites

13

none. If Appellants, at the time of the temporary injunction hearing on May 26, 2015, did not have the Ameripro documents in their possession, then how can they destroy something they did not possess? Ameripro cites no reference in the record to support the conclusion from the temporary injunction order that Appellants "permanently destroy[ed]" any Ameripro "documents" in the past or that they were likely to do so in the future. ( RR Vol. 3 at 10-15; 19- 22; 24-27; 129)

The best that the record shows is that old Ameripro borrower *electronic* files (from "Ameripro's computer network") were *copied and backed up* on external drives owned by Nasserfar and Task (as authorized and required by Ameripro policies and procedures) and intermingled with their electronic personal files. (*See*, RR at Vol. 3 116; ). The record conclusively establishes -- without rebuttal from Ameripro -- that all of the *copied* electronic files (from "Ameripro's computer network") on the external hard drives owned by Nasserfar and Task were returned to Ameripro prior to the temporary injunction hearing, and no such *copied* electronic files (or paper files of any kind) were retained by Appellants at the time of the temporary injunction hearing. (*See*, RR at Vol. 3 at 116; 122-123; 129; Plaintiffs' Exhibit 34 at RR Vol.4; RR at Vol.3 at 73 and 85.)

Thus, there is no evidence that Appellants "permanently destroyed Ameripro documents" because the only evidence is that electronic files were *copied and backed up* on external storage devices, and then returned to Ameripro and not

14

retained. Additionally, there is no evidence from the record that Ameripro did not have in its electronic storage systems the *same electronic files* that were *copied and backed up* on external storage devices of Nasserfar and Task. Where are the citations to the record of any evidence to support what Ameripro claims is the legally necessary foundation to the temporary injunction order -- the attempts by Appellants to "permanently destroy Ameripro documents"? The absence of this evidence, which Ameripro claims is the cornerstone to the "reasons for issuance" of the temporary injunction (Ameripro Brief at 22 -23), confirms the invalidity of the injunction order.

In addition, the Temporary Restraining Order entered by the district court on May 12, 2015 (14 days prior to the temporary injunction hearing), ordered Appellants within three (3) days of May 12, 2015 to "return" the *copied* electronic files of Ameripro from the external drives and after returning the *copied* electronic files to Ameripro "not to retain any copies" -- in other words to destroy ("destruct") the *copied* electronic files *from Appellants' electronic storage devices*. (CR at 95-98.). Before the temporary injunction hearing (which began on May 26, 2015) and in compliance with the Temporary Restraining Order, Appellants did as the Temporary Restraining Order ordered them to do. All *copied* electronic files potentially being the property of Ameripro were returned to Ameripro by Lee Whitfield of Digital Discovery and after returning the copied electronic files, the

copied electronic files *on the electronic devices of Appellants'* were destroyed ("not retained") by Lee Whitfield -- all as ordered by the district court in the Temporary Restraining Order. (*See*, RR at Vol. 2 at 241-247). There was no finding in the Temporary Injunction Order that Appellants had violated the Temporary Restraining Order.

There is no evidence in the record that any *copied* electronic files (or paper files or other information) belonging to Ameripro were retained by Appellants by the time of the temporary injunction hearing beginning on May 26, 2015. Ameripro demanded that the district court order Appellants to return the *copied* electronic files and to destroy the *copied* electronic files after their return to Ameripro. Any destruction of the *copied* electronic files *from the electronic devices of Appellants'* was at the demand of, and in compliance with the district court Temporary Restraining Order entered on May 12, 2015. Ameripro failed to cite to any evidence in the record that Appellants, at any time, destroyed or attempted to destroy documents or files on "Ameripro's computer network." Now, Ameripro posits the justification for the Temporary Injunction based on Appellants' *compliance* with the Temporary Restraining Order. Ameripro's argument is invalid.

The only evidence of destruction of files was the destruction of the electronic files on the laptop hard drive of Nasserfar *by Ameripro* after Nasserfar turned in his

laptop computer to Ameripro on January 16, 2015. (*See*, RR Vol. 3 at 27-30 ). In addition, there is no evidence that Appellants possess any of the *copied* electronic files (or paper files) of Ameripro after May 15, 2015 and no evidence was admitted at the temporary injunction hearing that Appellants continued to possess any *copied* electronic files or paper files of Ameripro as of May 26, 2015 because everything had been returned prior to the beginning of the temporary injunction hearing on May 26, 2015 (RR Vol. 2 at 115-117; 122-123; PX 34; Vol. 3 at 74-78; 82-83;85-86; 148-149). The "possession" and the alleged "destruction" of the files of Ameripro by Appellants is the foundation to the arguments in Ameripro's response brief to substantiate the reasons for the imminent and irreparable injury justifying the temporary injunction order. The foundation fails for the reasons and evidence explained in this section of the Reply Brief.

Ameripro's efforts to redeem the void temporary injunction order fail. Ameripro relies on *IAC, Ltd. v. Bell Helicoptor Textron, Inc*. 160 S.W.3d 191 (Tex. App.-- Fort Worth 2005, no pet.) (Brief at 24) but, in that case the evidence was clear that the defendant "possessed trade secrets" of the plaintiff and threatened to disclose the plaintiff's trade secrets publicly. Those facts do not exist here. The elusive trade secrets have never been identified by Ameripro or the district court. And there is no evidence that Appellants possessed any documents, records or files of Ameripro or trade secrets, if any, as of the date of the beginning of the temporary

injunction hearing on May 26, 2015. Again, the critical element of possession and threat to disclose are completely absent. This authority is inapposite. For the same reasons, *Rugen v Interactive Business Systems, Inc.,* 854 S.W.2d 548 (Tex. App. -- Dallas 1993, no pet.) (Ameripro Brief at 24) is inapposite because the evidence was clear that the "former employee possesses confidential information." Not only is there no evidence of any *possession* by Appellants of trade secrets or confidential and proprietary information allegedly belonging to Ameripro as of the date of the beginning of the temporary injunction hearing - May 26, 2015 -; but, additionally, the temporary injunction order does not find that Appellants had in their possession as of May 26, 2015 any trade secrets or confidential and proprietary information belonging to Ameripro. Everything had been returned and not retained as ordered by the temporary restraining order dated May 12, 2015. And, *Tranter, Inc. v. Liss,* 2014 WL 1257278*9 (Tex. App. -- Fort Worth March 27, 2014, no pet.) (Ameripro Brief at 25) involved breaches of non-competes covenants, which do not exist in this case.

Possession of trade secrets is the constant theme of the additional authorities relied upon by Ameripro to attempt to justify the reasons for the temporary injunction. *Hill v. McLane Co., Inc*. 2011 WL 56061 *5 (Tex. App. -- Austin January 5, 2011, no pet), and *Conley v DSC Commun. Corp*., 199 WL 89955 *5 (Tex. App. -- Dallas February 24, 1999, no pet.) (Ameripro Brief at 26), again

18

involve actual possession of trade secrets or confidential and proprietary information by the defendants. No such evidence exists here and, therefore, these cases are inapposite to support the issuance of the injunctive order.

The remaining authorities relied upon by Ameripro to revive the invalid temporary injunction order did not involve cases for alleged misappropriation of trade secrets, alleged possession of confidential and proprietary information, or claims of "destruction" of documents. *Amalgamated Acme affiliates, Inc. v Minton,* 33 S.W.3d 387 (Tex. App. -- Austin 2000, no pet) involved claimed misrepresentations concerning commercial speech which caused deception and confusion among customers. It is inapposite. *Inex Indus., Inc. v. Alpar resources, Inc.,* 717 S.W.2d 685 (Tex. App. -- Amarillo 1986, no writ) involved an injunction to prohibit appellant from reworking all and gas wells leased by the appellee. It is inapposite. *Texas Tech University Health Sciences Center v. Rao,* 105 S.W.3d 763 (Tex. App. -- Amarillo 2003, pet. dismissed) involved an injunction to reinstate a medical student expelled for engaging in protected free speech on a matter of public interest concerning an autopsy that he witnessed. It too is inapposite.

It is not disputed that the temporary injunction order failed to find that Appellants possessed Ameripro trade secrets and confidential and proprietary information when the temporary injunction hearing began on May 26, 2015 and it is not disputed that there is no evidence in the record that Appellants possessed

Ameripro trade secrets and confidential and proprietary information after May 15, 2015. The lack of any finding of possession and the lack of any evidence of possession of any trade secrets or confidential and proprietary information dooms any reasoning for granting the temporary injunction because, on his face, the temporary injunction order does not explain why anything is imminent and why failure to grant the temporary injunction is likely to cause irreparable injury to Ameripro since there is no evidence that Appellants ever destroyed Ameripro's documents, electronic files, or information. For this reason, the temporary injunction should be declared invalid.

## II.

**REPLY TO AMERIPRO ARGUMENT APPLYING THE NON-SOLICITATION PROVISIONS OF THE CONTRACTS TO REAL ESTATE HOMEBUILDERS AND CONDOMINIUM DEVELOPERS, REAL ESTATE SALES AGENTS, AND OTHER REAL ESTATE PROFESSIONALS INVOLVED IN THE REAL ESTATE INDUSTRY BECAUSE THEY ARE NOT "CUSTOMERS" OF AMERIPRO.**

Ameripro sidesteps the reading and construction of its employment agreements with Nasserfar and Task. It's brief fails to address the actual language of the contract and how the contract, on its face, should be interpreted. Additionally, Ameripro sidesteps the explicit one-year limitation on the solicitation of "customers" and does not address the unlimited duration of the injunction order prohibiting solicitation. Ameripro does not explain or argue how the contract can be interpreted in any way except that customers are the borrowers because of the

explicit language in the contract which provides "any customer of Employee that existed prior to employment with the Company, provided the *customer and their loan* is not being serviced by the Company." (Emphasis added). Ameripro gives no rebuttal for the definition of the customer as being a customer who has a "loan" with Ameripro. Ameripro's failure to offer a reasonable explanation regarding this language speaks loudly concerning the improper construction of the contract by the district court. ( RR Vol. 3 at 145-147).

Ameripro also does not offer any rebuttal or explanation rebutting the essence of its business which is to loan money to borrowers who are its customers. (RR Vol. 2 at 109-111; 115, L9-21). Ameripro offers no rebuttal, explanation or argument regarding the language on the face of the employment contract language which refers to the term "customer" as residential loan borrowers, not homebuilders or residential developers. Ameripro refuses to engage in or offer arguments from the face of the contract which would explain the district court error in concluding that the term "customer" applies to residential homebuilders, residential condominium developers, and other real estate professionals such as real estate sales agents, and in granting a temporary injunction prohibiting solicitation of "Brohn Homes, Seaholm Residences and Clark Wilson Builders" (*See*, App. 1 at 4). On the face of the contract and the language of the contract, in the absence of rebuttal argument from Ameripro, it is clear that the construction of

the contract by the district court is erroneous and is contrary to the explicit language and intent of the agreement.

. Ameripro does not respond to the Texas authorities cited in Appellants' Brief regarding the latent ambiguity of the contract created by collateral matters, such as the application of the non-solicitation provisions to entities that are not customers of Ameripro. [2] Ameripro did not dispute that the temporary injunction record provides no evidence that either Michael Nasserfar or Michael Task ever solicited loans from any residential loan borrowers of Ameripro or from Brohn Homes, Seaholm Residences, and Clark Wilson Builders.

Ameripro did not reply to or argue that a "customer" is <u>not</u> generally defined as "one who regularly or repeatedly makes purchases of, or has business dealings with, a tradesman or business." BLACK'S LAW DICTIONARY 348 (5th ed. 1979) or <u>not</u> "one who regularly or repeatedly makes purchases of, or has business dealings with a tradesman or business house; one who customarily has dealings with a business establishment." Ameripro did not dispute that it confessed at the temporary injunction hearing that it does not have any direct business dealings with and does not loan money to residential homebuilders, residential real estate agents or residential developers. (RR at Vol. 2 at 109-111). Ameripro offered no legal authority, statutory or case law, which would define the term "customer" in

---

[2] *See* authorities cited in Appellants' Opening Brief at 30.

any other manner than one who, in response to Ameripro's offer of a residential mortgage, does business with Ameripro and purchases the product offered by Ameripro -- a residential mortgage, and such person can be none other than a borrower who has purchased a residential mortgage.

Instead of addressing the legal arguments regarding the interpretation of the employment contract on the face of the language from the contract and the legal arguments regarding the definition of the term "customer," Ameripro relies upon inapposite references to statements made by Nasserfar and Task. No matter what their statements are, their statements cannot redefine or reformulate the definition of the term "customer" which on its face in the employment contract is defined as one who has a "loan" with Ameripro. The contract language controls, not the parole statements of the parties. And, Ameripro has offered no legal authorities or even any legal arguments that would interpret, from the face of the contract, the term "customer" to mean anything other than a borrower who has a "loan" with Ameripro. There is no other plausible explanation, from the wording of the contract, than that the term "customer" is a reference to a mortgage loan "borrower" who customarily does business with Ameripro -- a company, without question, that has as its sole purpose to originate residential loan mortgages for borrowers. For these reasons, as a matter of law, the district court erred in defining

the term "customer" to mean any one, person or entity other than a residential mortgage borrower.

## III.

**REPLY TO AMERIPRO ARGUMENT THAT APPELLANTS CAN BE BARRED FROM SOLICITING AMEREIPRO CUSTOMERS FOR A COMPETITOR IN BREACH OF FIDUCIARY DUTIES.**

The title of paragraph III. of Ameripro's brief is disjointed with the arguments following the title. (Ameripro Brief at 35). Ameripro erroneously asserts that the district court's findings of potential violations of causes of action "warrant injunctive relief" without analysis of legal authorities to support the imminent and irreparable injury requirements of Rule 683. Nowhere in this section of the brief does Ameripro argue or explain the imminent and irreparable harm requirements as applied to any alleged causes of action. Simply because a party is alleged to have breached a contract does not, by that fact alone, justified the issuance of the extraordinary remedy of a temporary injunction which is limited to orders that are necessary to prevent imminent and irreparable injury. Likewise, interference with contract, conversion, and misappropriation, do not, as simply stated as conclusions, provide the necessary imminent and irreparable injury requirement to justify the issuance of a temporary injunction. The authorities relied upon by Ameripro are inapposite. *ERI Consult. Engrs., Inc. v. Swinnea*, 318 S.W.3d 867 (Tex. 2010) did not involve a review of a temporary injunction order

rather it involved a review of a final judgment on damages. Additionally, the central question in the case was a non-compete provision in a buyout agreement. There is no non-compete provision in the employment contracts under review here. This case is inapposite. In *Hunter v. Bldgs. & Mfg. LP v. MBI Global, LLC,* 436 S.W.3d 9 (Tex. App. -- Houston [14th Dist] 2014, pet. denied) the court found that the evidence was insufficient to support a finding that the misappropriation of trade secrets proximately caused lost profits. It was not an injunction case. It is inapposite to the issues before this court.

Ameripro refers to RR 66-68, 70-71, 81-82, 89-91, 99, and 143 in support of its argument regarding trade secrets and misappropriation by Appellants (Brief at 36); however, none of this testimony even remotely suggests that Appellants had any of the information referred to in this testimony in their possession on May 26, 2015 when the temporary injunction hearing began. While some of this information may have been included in the external storage device backups that were required to be copied as part of the policy of Ameripro, these references to the record do not support the argument asserted by Ameripro that Appellants possessed any of this information at the time that the temporary injunction order was entered and, thus, there is a complete lack of evidence to support the *necessity* for the temporary injunction order in order to prohibit imminent and irreparable

25

injury. Ameripro's arguments in this section of the brief go to the merits of its claim for damages; not injunctive relief.

In part B., of III, at 37, Ameripro argues about alleged past conduct of Appellants which might be relevant to Ameripro's damage claims but have no relevance at all to the basis, justification and reasons for the temporary injunction which concerns future conduct, not past conduct. Once again, Ameripro provides no evidence from the record of any *imminent* conduct of Appellants that could possibly cause irreparable injury to Ameripro. The arguments in this section of the brief have no applicability to the question of the validity of the temporary injunction order and go only to the question of damages, after trial. (See Ameripro Brief at 37 - 40). It is unnecessary to address questions of past conduct that provide no basis for any future actions or imminent irreparable injury.

Reply to Part C.

Although there is discussion of Texas cases in this section of the Ameripro Brief, Ameripro, once again, fails to cite to evidence that any trade secrets exist or were misappropriated by Appellants. Even if there were trade secrets and even if there was a misappropriation, which is denied, Ameripro fails to provide any evidence that any alleged trade secrets were still in the possession of Appellants as of the date of the temporary injunction hearing on May 26, 2015 because all possible information of Ameripro was returned to Ameripro by May 15, 2015 and

26

non was retained by Appellants. Ameripro, once again, fails to cite to evidence in the temporary injunction record that Appellants possessed any trade secrets or confidential or proprietary information of Ameripro as of the first day of the temporary injunction hearing on May 26, 2015. This appeal is not about damages. This is an appeal about an erroneous temporary injunction. Arguments concerning past conduct which allegedly proximately caused damages -- lost profits -- to Ameripro are inapplicable to this appeal. They need not be addressed by the court in this appeal and there is no need to respond to such arguments in Appellants Reply Brief.

Reply to part IV.

In part IV. of the Ameripro brief, Ameripro contends that Appellants' argument that they returned all of the confidential information of Ameripro prior to the May 26, 2015 hearing is "false"; but, Ameripro offers no evidence from the hearing record that Appellants continued to possess any confidential information of Ameripro on May 26, 2015. Ameripro's argument is confusing and strained. It misconstrues the language of the temporary restraining order dated May 12, 2015. (CR 95-98). The temporary restraining order states that Appellants are ordered to "return to Ameripro all confidential documents and information they removed from Ameripro, *in whatever medium such documents and information exists*, and do not retain copies." (Emphasis added) (Except for counsel who can retain copies as

27

attorneys eyes only.). This order <u>does not require</u> that all laptops, external drives, cell phones, and all other electronic storage devices ("medium") on which there exist any confidential documents and information of Ameripro must be turned over to Ameripro. It only requires that the documents and files be turned over, not the computer drives, laptops, cell phones and all other electronic storage devices. Ameripro misconstrues the temporary restraining order to require that Appellants surrender to Ameripro all of their electronic storage devices -- laptops, external storage devices, cell phones, etc. This misconstruction of the temporary restraining order is the sole basis for Ameripro claiming that "Appellants did not return all of the confidential information they downloaded from Ameripro's computers." It is an erroneous claim.

The record is clear that Appellants returned all of the alleged confidential and proprietary information of Ameripro prior to the May 26, 2015 hearing and did not retain any copies. (RR at Vol.3 at 122: Plaintiffs' Exhibit 34 at RR Vol. 4; RR at Vol. 3 at 73-78, and 85-86). Ameripro offered no conflicting evidence that the information ordered to be returned was not returned or that the information ordered to be returned was retained by Appellants. As of May 26, 2015, the evidence was clear and concise that all information was returned to Ameripro and was not retained by Appellants. *Id.* and RR Vol. 3, 74-71 and 85-86.

Next, Ameripro falsely contends that Appellants "destroyed documents" after the "TRO commanded their return." *See*, Part B of Ameripro Brief at 44. This contention is based on "140" folders that were deleted from a drive labeled "CO" and reviewed by Roy Rector. (RR Vol. 3 at 10-15; 19- 22; 24-27; 129). However, Ameripro never offered any evidence that the "CO" drive was ever in the possession of Appellants, and never offered any evidence of the chain of custody of the "CO" drive. Id. There is no evidence that the drive was a "USB device" as contended by Ameripro and no evidence that the external drive was labeled "Nasserfar External Drive." *Id.* Ameripro's contentions regarding the possession by the Appellants as of May 26 2015 of any information and the deletion or destruction of any information are unfounded and without support in the record.

Next, Ameripro argued that Appellants "used" the confidential information. *See* Ameripro Brief at 46. This argument is immaterial to the question of the validity of the temporary injunction. This appeal is not about damages arising from the improper "use" of someone else's property. Whether the confidential information was "used" or not "used" or "infringed" is a question of fact for the jury and has no relevance to the validity of the temporary injunction order. This argument is also irrelevant since there is no evidence that Appellants had possession of any of the confidential information at the beginning of the temporary injunction hearing on May 26, 2015. Where is the evidence from the temporary

29

injunction hearing record that Appellants had possession of any of the confidential information as of May 26, 2015 -- the date that the temporary injunction hearing began?

Reply to part V.

In part V. of Ameripro's Brief at 47, once again, Ameripro relies upon past alleged wrongful conduct of the Appellants as the sole support for an injunction which is prospective in nature and is to be designed to prevent future imminent and irreparable harm. Past conduct does not matter. What matters is whether there is evidence of imminent and irreparable harm if the injunction is not granted. Here there is none. Nothing in this section of the Ameripro brief supports the district court's temporary injunction. *Hill* and *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593 (Tex. App. -- Amarillo 1995, no pet.), relied upon by Ameripro at 49 of its Brief, are inapplicable because in *Hill* it was undisputed that the defendants had possession of trade secrets at the time that the injunction was issued and in *Miller* the defendants had possession of confidential information and were actively using the confidential information to compete at the time that the injunction was issued. Here, there is no evidence of Appellants' use of any trade secret or confidential information and no evidence that Appellants possessed any trade secret or confidential information of Ameripro at the time of the temporary injunction hearing in May 2015. Ameripro presented no evidence of any

solicitation, and no evidence of any competition using trade secrets or confidential information, and no evidence that Appellants even possessed trade secrets or confidential information when the temporary injunction was heard and issued. (RR Vol. 3 133- 135).

*Reply to part A. -C at 49 - 53.*

In part A. - C. of IV. at 49 -53 of Ameripro's Brief, Ameripro urges that the court ignore the damages which Ameripro is seeking as an inadequate remedy. In *Garth v Staktek Corp.*, 876 S.W.2d 545 (Tex. App. -- Austin 1994, writ dism'd w.o.j.), there was clear and sufficient evidence that a trade secret existed and that the defendant was using the trade secret to compete against the plaintiff. In this case, there is no evidence of a trade secret, no evidence of any use of any trade secret by Appellants and no evidence that Appellants even possessed a trade secret of Ameripro at the time of the temporary injunction. Additionally, *Garth* involved a technology product which was not generally available in a narrow marketplace and there was no question regarding the trade secrets for developing the technology product. Here, there are no trade secrets because the process and methods and means of obtaining the origination of a residential mortgage is a highly regulated industry and the methods and means of obtaining the origination

31

of a residential mortgage is public information and regulated by state and federal law. [3] *Garth* is inapplicable.

*Flake v. EGl Eagle Global Logistics, L.P.*, 2002 WL 31008136 *4 (Tex. App. -- Houston [14th Dist. ] September 2, 2002, no pet.) is inapplicable because defendant admitted to possessing trade secrets and confidential information at the time of the temporary injunction hearing and defendant admitted that he was using trade secrets and confidential information to compete against his former employer and would continue to do so unless he was enjoined by the court. There was also no adequate remedy in damages for the former employer. In *Frequent Flyer Depot, Inc. v American Airlines, Inc.* 281 S.W.3d 215 (Tex. App. -- Fort Worth 2009, pet. denied), did not involve trade secrets or confidential information. It involved the defendants direct interference between a contract between the defendant and its members of its frequent flyer program. On its facts, and law, it is not applicable. There would be no damage claim that American Airlines could substantiate caused by the brokering a frequent flyer miles. This case is inapplicable to the present case. In *Walling v. Metcalfe*, 863 S.W.2d 56 (Tex. 1993) the dispute centered on a contract to purchase a business and the Supreme Court held that an injunction to prohibit the sale of the business would maintain the status quo until the merits of

---

[3] *See, e.g.,* TEXAS FINANCE CODE, Title 3, Chapter 180 (2015)(Residential Mortgage Loan Originators); TRUTH IN LENDING ACT, 15 U.S.C. §1601, *et seq.*; THE DODD-FRANK WALL STREET REFORM AND CONSUMER PROTECTION ACT 124 Stat. 1376 (2010); THE S.A.F.E. MORTGAGE LICENSING ACT, 12 U.S.C. § 5101, *et seq.*; THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA), 12 U.S.C. § 2601, *et. seq.*; THE EQUAL CREDIT OPPORTUNITY ACT, 15 U.S.C. 1691 *et. seq.*; and, THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. 1861, *et seq.*

the contract dispute can be determined. On its facts, it is inapplicable to the issues in this case. *Topheavy,* cited at 52, is an applicable because here there is no evidence of any future harm to Ameripro that could not be compensated by damages whereas in that case the question was the unlawful distribution sale of games.

Ameripro next makes the other meritorious argument that it's sworn interrogatories seeking over $1.9 million in damages cannot be considered by the court as evidence of an adequate remedy at law. Ameripro Brief at 53. The evidence that America was seeking millions of dollars in damages and has sworn in answers to interrogatories that is entitled to seek millions of dollars in damages is part of the record. The clerk's record was supplemented and is part of the appellate record in this case. The credibility of Ameripro is called into question when its president testifies at the hearing that he cannot calculate damages and yet Ameripro swears in and answers to interrogatories after the hearing that it is entitled to recover over $1.9 million in damages. It is clear from the record including the supplemental clerk's record that Ameripro has an adequate remedy in damages that it is seeking from Appellants and, consequently, there is no irreparable injury for which a temporary injunction is necessary to prohibit. Ameripro has not been irreparably injured and there will be no irreparable injury if the temporary injunction is quashed.

**REPLY TO AMERIPRO ARGUMENT THAT THE TEMPORARY INJUNCTION IS NOT OVERBROAD AND THAT THERE IS A DIRECT NEXUS BETWEEN THE ENJOINED CONDUCT AND IMMINENT AND IRREPARABLE INJURY TO AMERIPRO.**

Ameripro does not dispute that a district court abuses its discretion when it misapplies the law to established facts or when it concludes that a temporary injunction should be granted and such conclusion is not reasonably supported by the evidence or that the entry of a temporary injunction that enjoins lawful as well as unlawful acts is overbroad and constitutes abuse of discretion.[4]

Part VI. of the Brief of Ameripro sidestepped any argument regarding the nexus between the imminent and irreparable injury and the specifics of the conduct that is enjoined. Nowhere in the Ameripro Brief is there an argument or even an attempt to connect the enjoined actions with reasons for imminent and irreparable injury. For this reason, the temporary injunction order is overbroad.

There is no bases, and Ameripro provides no argument or legal authorities for justifying the AEO quarantine of all of the "media" -- electronic devices of Nasserfar, Task and Gosnay -- that may have, at one time, contained a file of Ameripro. No evidence was presented at the May 26, 2015 temporary injunction hearing that any of the "media" of Nasserfar, Task and Gosnay still contained any information of Ameripro, and the brief of Ameripro does not address the absence

---

[4] *See*, authorities cited in Appellants' Opening Brief at 54-55.

of evidence to substantiate that the electronic devices of the Austin loan officers still contains information of Ameripro. There is no evidence that the information of Ameripro was in danger of being destroyed if the electronic devices of the Austin loan officers was not placed in AEO quarantine because there is no evidence that the electronic devices of the loan officers was the only source of information of Ameripro. No evidence was ever offered at the temporary injunction hearing that the copied electronic file backed up information was the *only source of information of Ameripro*. For this reason, the temporary injunction order, in this respect, is overbroad.

Ameripro's reliance on *Correa v. Houston Surg. Asst. Serv., Inc.* , 2013 WL 3958499 (Tex App. -- Houston [14th Dist.] July 30, 2013, no pet.) is misplaced because *Correa* was enforcement of a non-compete clause in a contract. The contracts here do not contain non-compete provisions. Therefore, clause (iii) of the temporary restraining order unreasonably restrains "Oak Mortgage, [and] employees of Oak Mortgage" from "directly or indirectly, soliciting business from Brohn Homes, Seaholm Residences and Clark Wilson Builders." There is no contract or fiduciary relationship between Oak Mortgage and Ameripro and, thus, no legal justification for enjoining all loan officers and employees of Oak Mortgage from soliciting business from publicly known homebuilders. The temporary injunction order does not set forth an explanation of why Ameripro will

35

be imminently and irreparably injured if loan officers and employees of Oak Mortgage -- other than Nasserfar, Task and Gosnay -- solicit business from publicly known homebuilders -- such as Brohn Homes, Seaholm Residences, and Clark Wilson Builders -- and there is no evidence of imminent or irreparable injury that will occur to Ameripro if such actions are not enjoined. Ameripro failed to address this argument. The injunction should be modified to, if at all, only restrain solicitation if in direct concert with Nasserfar, Task or Gosnay. Prohibiting solicitation by Oak Mortgage and its other employees and officers, who have no contract with Ameripro is overly broad.

Ameripro's response to Appellants' argument that clause (iii) of the temporary restraining order is unreasonable and overbroad because it does not restrict the prohibition on solicitation to the one (1) year term as set forth in the employment agreements. (App. 6; RR Vol. 4 Plaintiffs' Exhibit 3) is inapposite to the argument. Ameripro sidesteps the argument and refuses to address the limited duration of the contractual non-solicitation provisions to one year. The restriction on solicitation, if properly applied and applicable at all, is limited to one year from the date that Nasserfar, Task and Gosnay terminated their employment relationship with Ameripro. Ameripro has no response to this argument. For these reasons, the temporary injunction order is overbroad in many specific respects

**PRAYER**

For these reasons, Appellants pray that the court dissolve the temporary injunction.

Respectfully submitted,

/s/ Charles Bundren
**WM. CHARLES BUNDREN & ASSOCIATES
LAW GROUP, PLLC**
Wm. Charles Bundren, Esq.
Attorney-in Charge
State Bar No. 03343200
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034
(214) 808-3555     Telephone
(972) 624-5340     Facsimile
e-mail:        charles@bundrenlaw.net
**ATTORNEY FOR APPELLANTS**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on this 2nd day of November, 2015, all counsel of record were served with a copy of this document by serving the following:

Susan Burton, Esq.
State Bar No.        03479350
GRAVES DOUGHTERY HEARON & MOODY
P.C.
401 Congress., Suite 2200
Austin, Texas 78701
Telephone:  (512) 480-5600
Telecopier:  (512) 480-5862 (facsimile)
E-mail:        sburton@gdhm.com
**ATTORNEY FOR APPELLEE:**

__X__by the electronic filing manager pursuant to TRAP 6.3, 9.2 (c)(2), 9.5 (a), 9.5 (b) (1), 9.5(c) (4)and 9.5(e),

____ by certified mail return receipt requested deposited with the United States Postal Service on the date indicated above pursuant to TRAP 6.3, 9.2 (c)(2), 9.5 (a), 9.5 (b) (1), 9.5(c) (4)and 9.5(e),

__X__ by email at the email address indicated above pursuant to TRAP 6.3, 9.2 (c)(2), 9.5 (a), 9.5 (b) (1), 9.5(c) (4)and 9.5(e),

____ by commercial delivery service deposited with _____ on the date indicated above pursuant to TRAP 6.3, 9.2 (c)(2), 9.5 (a), 9.5 (b) (1), 9.5(c) (4)and 9.5(e),

and/or

____ by fax at the fax number indicated above pursuant to.
TRAP 6.3, 9.2 (c)(2), 9.5 (a), 9.5 (b) (1), 9.5(c) (4)and 9.5(e),

/s/ Charles Bundren
Wm. Charles Bundren, Esq.
**ATTORNEY FOR:**
**APPELLANTS**

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word and contains 7.430 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas rule of appellate procedure 9.4(i)(1).

/s/ Charles Bundren

**WM. CHARLES BUNDREN & ASSOCIATES LAW GROUP, PLLC**

38

Wm. Charles Bundren, Esq.
Attorney-in Charge
State Bar No. 03343200
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034
(214) 808-3555     Telephone
(972) 624-5340     Facsimile
e-mail:        charles@bundrenlaw.net
**ATTORNEY FOR APPELLANTS**